WAYCROSS AIR-LINE RAILROAD COMPANY *v.* OFFERMAN & WESTERN RAILROAD COMPANY.

1. Contracts made by one corporation are not binding upon another corporation merely because the stock in both is owned by the same persons.
2. When the charter of a railroad company authorizes the construction of the railroad "to" a given town, the company may construct its line of road "into" the town; and if in constructing its road into the town it is necessary to cross the line of another railroad in·order to reach its terminal point, it may cross such other railroad under the provisions of section 2167 (6) of the Civil Code, which declares that railroad companies incorporated under the general law of this State for the incorporation of railroad companies may cross another railroad "at any point in its route."
3. The rulings on the admission of evidence which were complained of were not erroneous. So far as the case turns on questions of fact, the finding of the judge is amply supported by the evidence, and his discretion in refusing to grant an interlocutory injunction will not be controlled.

Argued February 5, — Decided February 27, 1900.

Petition for injunction. Before Judge Bennet. Ware county. December 16, 1899.

*J. L. Sweat* and *L. A. Wilson*, for plaintiff.
*W. E. Kay* and *J. C. McDonald*, for defendants.

Cobb, J. The Waycross Air-Line Railroad Company made application for an injunction to prevent the Offerman and Western Railroad Company from crossing its tracks in the town of Nicholls. The judge refused to grant the injunction, and the plaintiff excepted. At the hearing it appeared that the line of the Waycross Air-Line Railroad Company ran from Waycross in a northwesterly direction through the town of Nicholls to the town of Douglas; that the distance from Waycross to Nicholls was 29 miles; that the town of Offerman was on the line of the Plant System of Railways, at a point about 21 miles. northeast of Waycross; and that the Offerman and Western railroad ran from Offerman in a westerly direction to Nicholls, a distance of about 40 miles. The defendant company had fixed as its terminus within the town of Nicholls a point south of the line of the plaintiff company, and in order to reach the same it was necessary that its tracks should cross those of the plaintiff company. The plaintiff introduced testimony which it is.

claimed established that in 1896 an agreement was entered into between the plaintiff, the Southern Pine Company, and the Plant System of Railways, that in consideration that the Offerman railroad, then a tramroad, would not be extended either south from Offerman or further in a westerly direction, and thus not invade "the legitimate territory of petitioner for freights," etc., certain sums would be paid monthly by the Plant System and the plaintiff to the Southern Pine Company, and that under this agreement, within the period beginning July 1, 1896, and ending in June, 1899, sums of money amounting in the aggregate to more than $14,000 had been paid to the Southern Pine Company.    It was claimed that the road now being constructed by the defendant railroad company went into territory which the Southern Pine Company had agreed should not be entered by the railroad from Offerman.

· 1. The petition alleged that the contract relied on by the plaintiffs was not made by the Offerman and Western Railroad Company but by the Southern Pine Company, another corporation; and it was alleged that the same persons were the stockholders in the two companies, and that therefore a contract made by the Southern Pine Company was, in legal effect, the same as if made by the Offerman and Western Railroad Company.    Even if the plaintiff had succeeded in establishing by proof the allegations above referred to, a contract by the Southern Pine Company would not be, in legal effect, a contract by the Offerman and Western Railroad Company.    One person may own all of the stock of a corporation, and still such individual shareholder and the corporation would, in law, be two separate and distinct persons.    *Newton Mfg. Co.* v. *White*, 42 *Ga.* 148.    One corporation may own all the stock in another corporation, but notwithstanding this the two corporations would not become merged but would remain separate and distinct persons.    *Exchange Bank* v. *Macon Construction Co.*, 97 *Ga.* 1; *Sparks* v. *Dunbar*, 102 *Ga.* 129.    It would necessarily follow, from the rulings in the cases cited, that two corporations would not become merged into each other merely because the stock in each was owned by the same persons.    Therefore the contract made by the Southern Pine Company was not the contract of

the Offerman and Western Railroad Company, even if the stockholders in each were identical. While the evidence showed that these two corporations had many of the same stockholders in each, they were not altogether identical. But even if the contract set up by the plaintiff company was binding upon the defendant railroad company and was otherwise valid, the finding of the judge that such contract, if ever made, had ceased to be operative, was abundantly supported by the evidence. .

2. It was contended that the Offerman and Western Railroad Company had no right to cross the line of the Waycross Air-Line Railroad Company within the limits of the town of Nicholls. The charter of the Offerman and Western Railroad Company authorized it to construct its road "to the town of Nicholls." It is well settled that a charter authorizing a railroad company to construct its line " to " a city empowers it to construct its line "into" the city. *Hazlehurst* v. *Freeman*, 52 *Ga.* 244. It is contended, however, that although under such a charter a railroad company will be allowed to carry its line into the town designated as its terminus, it will not, in the absence of express authority, be authorized to cross the tracks of another company for the purpose of reaching a place selected by it for its depot, when the depot could have been as well selected on the opposite side of the railroad sought to be crossed. The point at which a railroad company shall locate the end of its line within the town fixed by its charter as its terminus is a matter left entirely to the judgment and discretion of the corporation, when there is nothing in the charter fixing the point at which the end of the line shall be located. A railroad company will locate the end of its line at such point as will be to the best interest of those interested in the enterprise; and where such location does not interfere with the rights of the public, another corporation will not be permitted to bring in question the propriety or the wisdom of the location, when the corporation making the location proceeds in accordance with the law to ascertain the damages which the other corporation may suffer by the appropriation of any part of its property to the uses of the railroad company in reaching its terminal point, and, after they are so ascertained, pays or tenders the amount then fixed to the corporation whose property is taken.

The Offerman and Western Railroad Company has authority "to cross, intersect, or join or unite its railroads with any railroad heretofore or hereafter to be constructed, at any point in its route, or upon the ground of any other railroad company, with the necessary turnouts, sidings, and switches, and other conveniences necessary in the construction of said road, and may run over any part of any railroad's right of way necessary or proper to reach its freight-depot, in any city, town, or village through or near which said railroad may run, under the limitations hereinafter named; but in crossing another railroad, either over, under, at grade level, or otherwise, it shall be at the expense of the company making the crossing, and in such way and manner, at the time of construction, as not to interfere with said railroad in its regular travel or business." Civil Code, § 2167 (6). It is further provided in the law of this State, "that any railroad company shall have the right to cross the track of any other railroad company." Civil Code, § 2219. The Offerman and Western Railroad Company had, under the general law under which it was incorporated, the authority, as appears from the section of the code first above quoted, to cross any other railroad "at any point in its route." It will not be seriously contended that the route of a railroad ends when the corporate limit of the town or city which is fixed as its terminus has been reached. If a railroad company has authority to go into a town, that part of its line which is within the limits of such town is certainly "in its route." Such being the case, the defendant railroad company has undoubted authority to cross the track of the plaintiff company within the town of Nicholls. There is nothing in the case of the *City Council of Augusta* v. *Port Royal & Augusta Railway*, 74 *Ga.* 658, to conflict with the view here presented. It was there held that a railroad company which was authorized by charter to construct its line to the city of Augusta, and also, with the assent of the railroads in Georgia, to join its tracks to theirs on such terms as might be agreed on, did not have authority to construct its line of road "through" the city of Augusta for the purpose of connecting its tracks with those of another company. An examination of the record in that case discloses that, in order to make the con-

nection desired, it was necessary for the company to lay its tracks longitudinally upon at least one of the streets of the city. This can not be done in the absence of express legislative authority. *Davis* v. *Railroad Co.*, 87 *Ga.* 605, and cases cited.

3. It was further contended that the crossing sought to be made by the defendant railroad company could not be made except under the order and direction of the Railroad Commission. The general law for the incorporation of railroads provides that a railroad constructed under its provisions shall be at least ten miles from an existing railroad, but that this shall not prevent the new railroad from running as near to the other railroad as the interests of the new company may require for a distance of ten miles from either terminus. And it is further provided that whenever, on account of the physical formation of the country surrounding the initial or terminal point, or by reason of the number of railroads centering at an initial or terminal point, the conditions above referred to are impracticable, and the companies can not agree among themselves as to the location of the new road, such road shall be located under the order and by the direction of the Railroad Commission. Civil Code, § 2176. These provisions of the law can only apply to railroads which run practically parallel with each other; and when it is kept in mind that the line of the defendant railroad company is about forty miles long, and that the lines of the plaintiff company and of the Plant System constitute the other two sides of a triangle, twenty-nine and twenty-one miles long respectively, it needs no argument to show that the law above referred to has no application whatever.

The evidence before the judge authorized the finding that the defendant railroad company was duly organized at the time the proceedings were instituted to condemn the property of the plaintiff company for the purpose of making a crossing. The rulings on the admission of evidence which were complained of were free from error. The case turns to a large extent on questions of fact, and, there being ample evidence to sustain the view taken by the judge, his discretion in refusing to grant the injunction will not be interfered with.

*Judgment affirmed. All the Justices concurring.*